**Thomas CARPENITE and Rosemary T. CARPENITE, Plaintiffs**
**vs.**
**Eldena M. JENSSEN and Carsten D. JENSSEN, Charles M. NEILSON and Trudy G. NEILSON, Henriett AMBRO, Defendants**

**No. 97397**

**Land Court Department Trial Court of the Commonwealth of Massachusetts**

**December 16, 1981**

## DECISION

Plaintiffs brought a complaint for a declaratory judgment to determine 1) whether or not the defendant Eldena M. Jenssen has used her way in a manner which interferes with the plaintiffs' right to use the way; 2) whether or not the plaintiffs must be solely responsible for repairing and maintaining the way; 3) whether or not the defendants Jenssens' garage is within plaintiffs' right-of-way; 4) to restrain the defendants Jenssen from using the way for business purposes and obstructing it; 5) to order the defendants Jenssen to widen and improve the way and to remove hazards; and 6) for losses occasioned by the diminution in the value of their home, property, and use of the way as caused by the defendants.

Defendants Jenssen by way of answer deny that they have obstructed the plaintiffs' right-of-way and claim that by deed the plaintiffs are responsible for the maintenance and repair of the way.

The case was heard in Great Barrington on July 29, 1981. A stenographer was sworn to record and transcribe the testimony in the case. Six witnesses testified and five exhibits were introduced into evidence and are incorporated herein for the purpose of appeal. On the same date the court took a view of the property in the presence of the parties and counsel. Briefs were submitted to the court on September 23, 1981 by counsel for plaintiffs and on October 7, 1981 by counsel for defendants.

On all the evidence the court finds the following facts:

1. In the fall of 1963 plaintiff Thomas Carpenite began construction of the Carpenite "A-frame" home in South Egremont, Massachusetts even before acquiring title to the lot shown on Appendix A herein[1] from Catamount, Inc. late in 1963 or early 1964. The deed from Catamount, Inc. to the plaintiffs is not in evidence but title was evidently passed on March 5, 1964. The view disclosed that

**Stavisky & McElroy,** counsel for plaintiff.

**Paul R. Corbett,** counsel for defendant.

1. Appendix A is a copy of Exhibit 3, a sketch of the area, with additions by the court.

the Carpenite house is located on the side of a steep hill looking north with a ski slope to its west.

2. On March 5, 1964 Eldena M. Jenssen granted to Thomas Carpenite and Richard Gibb by deed recorded in Book 342, Page 554[2] a right-of-way over premises shown on Appendix A as over Janssen Parcel 1 approximately 25 feet in width and running from the division line of the said lands of Eldena M. Jensen and lands of Catamount, Inc. northerly to the junction of the driveway of Eldena M. Jenssen and the lands of Olga M. Jenssen as shown on Appendix A. Said right-of-way was to be used "at all times freely to pass and repass on foot, or with animals, vehicles, loads or otherwise, through and over the same". The said grantees covenant "from time to time and at all times hereafter, at their own costs and expenses, repair and maintain and keep repaired and in a proper and substantial manner the said road or way..."

3. Also on March 5, 1964 Olga M. Jenssen granted to Thomas Carpenite and Richard Gibbs by deed recorded in Book 342, Page 555, a right-of-way over the premises shown on Appendix A as Jenssen Parcel 2 as shown on Appendix A from Route 23 south to the right-of-way on Jenssen Parcel 1. The said way extends from the premises of Eldena M. Jenssen on the south, at the northerly end of her driveway to the said town road on the north, as the same is laid out and now in use. This grant of right-of-way is "as the same is laid out and now in use" and contains the same language concerning the right to pass freely and the same clause concerning responsibility for keeping the easement in good repair, as the grant from Eldena M. Jenssen to Thomas Carpenite and Richard Gibbs: (See paragraph 2 above).

4. Later on in 1964 plaintiff Thomas Carpenite negotiated an agreement with Carsten Jenssen[3] for the latter to finish building his house and to bulldoze the right-of-way from the plaintiffs' house to route 23 passable by automobile. Plaintiff paid for this work and for the right-of-way as part of the agreed-upon deal for defendant Jenssen to build his house.

5. By deed dated November 30, 1964, and recorded in Book 345, Page 444, Charles M. Neilson and Trudy G. Neilson acquired the property shown as Neilson houses on Appendix A from Eldena M. Jenssen.

6. By deed dated July 19, 1965 and recorded in Book 348, Page 109 the defendants Neilson acquired a right-of-way from Olga M. Jenssen and thus share the right-of-way with the Carpenites. However, this deed made no mention of the responsibility of the repair and maintenance of the right-of-way.

7. Over the years other structures have been added along the right-of-way: the smaller Jenssen house, No. 2, the Jenssen garage and apartment, the Jenssen new garage (unfinished), the main Neilson house, No. 1, and the Neilson smaller house, No. 2. Presently all of these structures, with the exception of the Jenssen new garage, are occupied either by the owners or their tenants, all of whom use the way regularly as it provides the only access to these structures.

8. Sometime during 1965 or 1966 the Jenssens constructed their garage and connecting apartment, along the edge of the right-of-way at the point where the way turns southwesterly up the hill to the Carpenites' house. The garage apartment is rented to a family and the garage is used by Mr. Jenssen for his car repair business, both of which generate additional traffic on the way. Plaintiffs have repeatedly voiced their objection to Mr. Jenssen's "junk" which collects around the garage area. This junk consists of old car parts, planks of wood, scraps of metal, tires, etc. The court also noted these conditions on its view of the premises.

---

2. All references to recorded instruments are to instruments recorded at the South Berkshire County Registry of Deeds.
3. Defendant Carsten Jenssen is the husband of the defendant Eldena M. Jenssen.

9. On November 23, 1968 defendant Thomas Carpenite, having acquired the interest of Richard Gibbs, conveyed his property to himself and his wife, plaintiff Rosemary T. Carpenite by deed recorded in Book 364, Page 196.

10. It would appear the defendant Eldena M. Jenssen by inheritance or otherwise has succeeded to the ownership of Parcel 1 from Olga M. Jenssen and it would likewise appear that she is still the owner of Parcel 2, both as shown on Appendix A.

11. There are no zoning laws in the town of Egremont. For some time defendant Carsten Jenssen has been carrying on a garage business, first in the garage at the turn in the road and lately at the new second garage to the east of the way. The addition of the second garage where various vehicles are also stored has not improved the area visually but has simply extended its already "junky" appearance.

12. There was evidence and the court finds that over the years Carsten Jenssen has impeded the plaintiffs' access to the way, by leaving cars or trucks parked blocking the way, particularly in the area by the garage. Plaintiffs testified that Mr. Jenssen has often refused to remove these vehicles, telling plaintiffs "it's my road and I'll do what I want with it". At some time Mr. Jenssen felled a tree across the way, blocking plaintiffs' passage for at least one-half a day. On one New Years Eve, Mr. Jenssen put a chain across the bottom of the right-of-way, blocking plaintiffs' access. The way only safely accomodates one car at a time, forcing plaintiff at times to back down the hill. Episodes of this nature have occurred with some regularity over the course of the last 14 years.

13. Plaintiffs have assumed the primary responsibility for maintaining the road since 1964, getting some financial aid from the Neilsons. Occasionally, defendant Neilson has made repairs himself and has joined plaintiff in hiring one Clem Hill to make repairs. The defendants Jenssen have never contributed to the upkeep of the road, although Carsten Jenssen has dug ditches across the road which are supposed to drain water off the road. Plaintiffs testified that these ditches are not only ineffective but dangerous. Plaintiff maintains a snow plow and plows the snow in the winter.

14. In 1980 Carsten Jenssen built a by-pass road which effectively eliminates plaintiffs' need to go by Mr. Jenssen's first troublesome garage. The by-pass road has not been used by the plaintiffs because they believe they have no legal right to use it. In addition, it appears that the by-pass road is partly built over land of Neilson and perhaps of Catamount, Inc. and plaintiffs claim that it is not a safe alternative route. The defendant Neilsons use the by-pass and have had no problems doing so. See Appendix A.

There are four basic questions to be considered herein:

1) whether or not the defendants Jenssen should be restrained from allowing others to use the way; 2) whether or not the defendants Jenssen can legally impede the plaintiffs' use of the right-of-way; 3) whether or not the plaintiffs must be solely responsible for the repair and maintenance of the way; and 4) whether or not defendants Jenssens' garage and apartment extend over the way.

As to the first question, plaintiff Thomas Carpenite was not granted an exclusive right-of-way by either the deed from Eldena M. or Olga M. Jenssen (see paragraphs 2 and 3). It is well settled that unless a grant specifically expresses that the right is to be exclusive, it is not. **Butler v. Haley Greystone Corporation,** 352 Mass. 252, 258 (1967). As there is no language in either deed which indicates, clearly, that the right-of-way was to be exclusive, the court rules that plaintiffs were not granted and do not now have an exclusive right-of-way.

Since this right-of-way is not exclusive, the fact that the defendants Jenssen have also granted a right-of-way to the defendants Neilson and have let their tenants and customers use the way is not inconsistent with the plaintiffs' right to use the

way. Nor is the fact that traffic along the way has increased over the years as noted by the court on its view inconsistent with the plaintiffs' right to use the way. Even though the defendant Carsten Jenssen may be operating a business there, there is no zoning law to prevent this. The increase in the use of the way does not amount to an overburdening of the easement and the court so finds and rules.

The court will not speculate as to whether or not the right-of-way may be overburdened at some future date as a result of uses to which it may be put by the defendants Jenssen or as a result of further conveyances of land adjacent to the way.

The answer to the second question is that the defendant Jenssen may not impede the plaintiffs' use of the way. The plaintiffs have every right to reasonable use of the way, and the defendants must not use the way in any manner which will interfere with the plaintiffs' right. **Texon, Inc. v. Holyoke Machine Company**, 1979 Mass. App. Ct. 1853. Reasonable use does not mean that the way may be blocked by defendants by trees being felled, by chain fences being erected, by ditches being dug or by vehicles left blocking the way. The type of interference with plaintiffs' use of the way amounts to an infringment of a valuable property interest. **Texon, Inc. v. Holyoke Machine Company, supra,** at 1856.

The third question involves the maintenance and repair of the way. Plaintiffs expressly agreed to maintain the way (see paragraphs 2 and 3 herein) and still have this duty. Defendants Neilson made no such covenant when they were deeded use of the way by the defendants Jenssen. (See paragraph 6 herein). As stated above, the character and use of the way has not changed significantly enough for the court to find that the way has become overburdened. Therefore, the rights and duties of the parties have not changed and as the Neilsons never agreed to maintain the way the court cannot order them to do so.

As to question 4 the court is uncertain as to the exact location of the corner of the garage vis-a-vis the way. Since the way is not certainly positioned and since in this area of the way a 25' width is provided, the court finds and rules that the 25-foot road width should be measured from the extreme north-east corner of the Jenssen garage and apartment as shown on Appendix A. That means that the way should be widened at this point to the 25-foot width. Inasmuch as this necessary widening is caused by the Jenssens' positioning of this garage in a less than careful manner, it is their responsibility to widen the way so that it conforms to the character of the remainder of the way. This is to be done by them within a reasonable time. Inasmuch as road work in the winter would be impractical, the court rules that it should be done not later than June 1, 1982. It should also be done in a reasonable manner so as not to block off the way unnecessarily during its widening.

The court orders the defendants Jenssen to widen the road by the corner of the garage to its required twenty-five foot width and to put it in the same passable condition as the remainder of the way.

The Court further permanently enjoins defendants Jenssen from blocking the road by parking cars thereon, digging trenches or otherwise.

On all the evidence the court rules that there is no diminution in value of plaintiffs' land attributable to the condition of the defendant Jenssens' property.

The court awards costs to the plaintiffs.

Judgment accordingly.

**William I. Randall, Chief Justice**